UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Laura Leslie,<br><br>    Plaintiff<br><br>v.<br><br>Las Vegas Metropolitan Police Department, Jonnie Twichell, Marla Sarpy,<br><br>    Defendants | 2:14-cv-01430-JAD-VCF<br><br>**Order Granting Defendants' Motion to Strike and Granting in Part and Denying in Part Defendants' Motion for Summary Judgment**<br><br>[ECF 47, 54] |

Las Vegas Metropolitan Police Department (Metro) 911 dispatcher Laura Leslie sues her employer and supervisors for a handful of state and federal-law claims arising from her alleged mistreatment in the workplace.[1] Defendants move for summary judgment on all of Leslie's claims.[2] Leslie responds that genuine issues of material fact preclude summary judgment,[3] though the bulk of her 9-page response is a Rule 56(d)[4] request for additional time to conduct discovery. Defendants also move to strike Leslie's "supplemental opposition."[5] I deny Leslie's Rule 56(d) request to conduct additional discovery and grant defendants' motion to strike her supplemental opposition. Although Leslie's assault claim against defendants Jonnie Twichell and Metro survives, I grant defendants summary judgment on all remaining claims and refer this case to the magistrate judge for a settlement conference.[6]

---

[1] ECF 24.

[2] ECF 47.

[3] ECF 48.

[4] Leslie refers to Rule 56(f) throughout her opposition. Effective December 1, 2010, FRCP 56 was amended and the provisions of subdivision (f) were moved to subdivision (d) without substantial change.

[5] ECF 54.

[6] I find this motion suitable for disposition without oral argument. Nev. L.R. 78-2.

# Background[7]

Leslie was hired by Metro in 1998 and continues to work as a 911 specialist in the communications bureau. She claims that defendants discriminated against her due to an unspecified disability and that the alleged abuse culminated in June 2013 when supervisors Jonnie Twichell and Marla Sarpy assaulted and falsely imprisoned her. Though Leslie does not identify her disabilities in her amended complaint, she testified in deposition that her disabilities include irritable bowel syndrome (IBS), spinal stenosis, diabetes, high blood pressure, depression, anxiety, chest pains, restless leg syndrome, blurred vision, and migraines.[8] Leslie alleges the following claims: (1) Assault (against all defendants), (2) Intentional Infliction of Emotional Distress (against all defendants), (3) Employment Discrimination-Disability (against Metro), (4) Employment Discrimination-Retaliation (against Metro), (5) False Imprisonment (All Defendants), (6) Unlawful Arrest and Excessive Force under 42 USC § 1983 (against all defendants).[9]

## A.    Leslie's Disabilities

Leslie testified that she was diagnosed with diabetes in 1994.[10] To manage her diabetes, she takes pills three times per day around meal times[11] and monitors her diet and blood sugar.[12] She also takes one pill per day to manage her high blood pressure.[13] Leslie indicated that sometimes her

---

[7] The following facts are taken from Leslie's deposition, which defendants cite extensively in their motion. Leslie makes a single citation to the record: her counsel's affidavit in support of her Rule 56(d) request.

[8] ECF 47 at 27, 99:12–19.

[9] Leslie also pled race and age-based discrimination claims initially, but the parties stipulated to their dismissal. ECF 42.

[10] ECF 47 at 27, 100:23–24.

[11] *Id.* at 28, 103:12; 29, 108:8–12.

[12] *Id.* at 28, 104:19–22.

[13] *Id.* at 29, 108:24–25; 30, 109:1–3.

diabetes medication makes her nauseous.[14]  She also indicated that she occasionally suffers blurred vision, which she attributes to her diabetes.[15]  When her vision becomes blurred at work, she pulls her screen closer and is still able to do her job.[16]  She reported no other side effects or job interferences as a result of her diabetes or high blood pressure.

Leslie testified that she was diagnosed with IBS in 2007[17] and that she takes non-prescription Imodium once daily to manage her symptoms.[18]  She indicated that she suffers no side effects from the Imodium and that it does helps alleviate her symptoms,[19] though she still suffers stomach pains and needs to use the restroom urgently once or twice per day.[20]

When pressed on which disabilities substantially interfere with her day-to-day activities, Leslie stated that, on the whole, her disabilities do not interfere with her daily activities; but she indicated that, if she had to name a disability that interferes, it would be her IBS.[21]  She testified that her IBS interferes with her job "because [she has] to use the bathroom,"[22] urgently at times, but that the Imodium has helped get this under control.[23]  She also testified that dispatch employees are allowed to leave their workstations and use the restroom without giving up a break or asking for

---

[14] *Id.* at 30, 110:7–9.

[15] *Id.* at 30, 110:1–14.

[16] Id. at 31, 114:8–12.

[17] *Id.* at 30, 112:3–4.  Leslie gave conflicting testimony on when she was diagnosed with IBS.  She first testified that she was diagnosed in 2013 but later stated that it was in 2007.  *Id.* at 39, 301:5–7.

[18] *Id.* at 30, 112:5–6.

[19] *Id.* at 30, 112:13–15.

[20] *Id.* at 31, 115:13–21.

[21] *Id.* at 38, 300:6–9.

[22]  *Id.* at 34, 126:8–16.

[23] *Id.* at 39, 300:20–25.

permission.[24]

**B.    The June 2013 Incident**[25]

Leslie was scheduled to work at 5:30 a.m. on June 18, 2013, but arrived about ten minutes late because she was having stomach pains and needed to use the restroom before she left the house.[26] Leslie was working cameras that morning when another employee, Ca-Sandra, called and told Leslie that her break would be pushed back 15 minutes—from 8:30 to 8:45 a.m—so that Ca-Sandra could take her break.[27] Because Ca-Sandra had gotten "stuck" on a stolen-vehicle call she had missed her scheduled break; Twichell approved the switch.[28] It was common practice for an employee's scheduled break time to get pushed back to accommodate another employee.[29]

Leslie called Twichell to complain about Ca-Sandra's handling of the 911 call, opining that had Ca-Sandra handled the call properly, she wouldn't have missed her break and thus interfered with Leslie's.[30] Twichell defended Ca-Sandra, which upset Leslie.[31] Though Twichell did not yell at her, Leslie thought Twichell was trying to "belittle" her.[32] The two bantered back and forth until Leslie admittedly "lost it"[33] and told Twichell to "just mark [her] sick" because she was going

---

[24] *Id.* at 47, 33 121:18–21.

[25] The following facts are based on Leslie's deposition testimony.

[26] *Id.* at 42, 335:11–14; 43, 339:14–15.

[27] *Id.* at 44, 372:1–4.

[28] *Id.* at 44, 372:1–4; 47, 379:14–17.

[29] *Id.* at 48, 390:20–23.

[30] *Id.* at 46, 384:12–19.

[31] *Id.* at 47 385:1–3.

[32] *Id.* at 47, 386:1–2.

[33] *Id.* at 47, 402:21–22.

1  home.[34] Leslie did not tell Twichell at that time that she was having stomach problems.[35]

2  Leslie started to pack up her work station. When she pulled the plug on her portable fan out
3  of the outlet, she accidentally struck Ca-Sandra with the cord.[36] Leslie then left the floor area of the
4  call center and began to head towards the exit. On her way out, she was confronted by Twichell and
5  Sarpy.[37] According to Leslie, Twichell, with her right hand, "kind of pushed [Leslie] to go into the
6  direction of the office."[38] Leslie refused and reiterated that she was going home sick.[39] Twichell and
7  Sarpy accused her of lying about being ill and told her that she had a habit of going home sick when
8  she did not like something.[40] Sarpy warned Leslie that, if she did not go back to work, she would be
9  relieved of her duties.[41] Leslie told her to "go ahead" and terminate her because she would not be
10  coming back to work.[42]

11  At that point, Leslie told Twichell and Sarpy to call an ambulance because she was having
12  chest pains.[43] Leslie then tried to enter a nearby restroom, but Twichell blocked the doorway.[44]
13  Leslie asked Twichell to move because she needed to use the restroom;[45] Twichell hesitated

---

[34] *Id.* at 47, 402:1–4.

[35] *Id.* at 49, 404:5–12.

[36] *Id.* at 49, 404:15–25; 50, 405:9–18.

[37] *Id.* at 50, 407:9–11.

[38] *Id.* at 51, 409:7–11; 426:4–7.

[39] *Id.* at 41, 409:20–22.

[40] *Id.* at 51, 410:2–3.

[41] *Id.* at 41, 410:7–9.

[42] *Id.* at 51, 410:9–14.

[43] *Id.* at 51, 410:14–16.

[44] *Id.* at 51, 412:13–14.

[45] *Id.* at 51, 412:20.

approximately 30 seconds and then stepped aside.[46]  Leslie went into the bathroom but soiled herself before she could make it to a stall.  When she left the restroom, she was told to go to the conference room to wait for the ambulance.[47]  After paramedics examined Leslie on-site, she left with her husband and went to Urgent Care.[48]  Leslie took approximately three weeks off from work and returned in mid-July 2013,[49] but she ultimately went on leave for 7 1/2 months.

Defendants move for summary judgment, arguing that Leslie lacks evidence to support the elements of her claims and that most are untenable as a matter of law.  Leslie responds that material issues of fact preclude summary judgment on her assault, false imprisonment, IIED, and discrimination claims.[50]  She also moves to conduct additional discovery under Rule 56(d) because she claims that a security camera by the restroom likely captured the June 18, 2013, incident.  Though "Leslie is not aware whether [Metro] is in possession of the video footage, has lost the video footage, is unable to locate the video footage, or has engaged in spoliation by destroying the video footage," she argues that the footage—if it exists—"is likely to prove [her] recitation of the facts" and summary judgment is therefore inappropriate.[51]

**Discussion**

**I.      Motion to Strike [ECF 54]**

Local Rule 7-2 authorizes the filing of a motion, opposition, and reply only.  Almost a month after defendants filed their reply in support of their motion for summary judgment, Leslie filed a 9-page "Supplemental Opposition to Defendants' Motion for Summary Judgment."[52]  "Courts in this

---

[46] *Id.* at 51, 412:22–23.

[47] *Id.* at 53, 418:5–9.

[48] *Id.* at 54, 428:2–5.

[49] *Id.* at 55, 432:1–2.

[50] ECF 48 at 2.  In her opposition, Leslie offers no support for her §1983 or retaliation claims.

[51] *Id.* at 3.

[52] ECF 51.

district routinely interpret Local Rule 7-2 to allow surreplies only by leave of court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond."[53] None of the arguments or evidence raised in Leslie's "supplement" arose or became known to her after she filed her opposition.  She never sought leave to file a surreply, and defendants raised no new arguments in their reply that would justify granting leave to file one.  Accordingly, I grant defendants' motion and strike Leslie's supplemental opposition and accompanying exhibits[54] and do not consider them in ruling on defendants' motion for summary judgment.[55]

**II.     Leslie is not entitled to a continuance of summary judgment under Rule 56(d) in order to conduct additional discovery.**

Rule 56(d) provides "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence."[56]  To prevail on a Rule 56(d) motion, the movant must show: "(1) that [she has] set forth in affidavit form the specific facts that [she] [hopes] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."[57]  A rule 56(d) motion "may be denied where the movant has been dilatory, or where the movant seeks irrelevant, speculative, or cumulative information."[58]

---

[53] *FNBN-RESCON I, LLC v. Ritter*, No. 2:11-cv-1867 2014 WL 979930, * at 6 (D. Nev. March 12, 2014) (internal citations and quotations omitted).

[54] ECF 51, 53.

[55] When deciding a motion for summary judgment, courts consider only properly authenticated, admissible evidence. FED. R. CIV. P. 56(c); *Bank of Am v. Orr*, 285 F.3d 764, 773–74 (9th Cir. 2002).  I thus decline to consider the exhibits to the supplemental opposition for the additional reason that none of them are properly authenticated.

[56] *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).

[57] *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

[58] *Slama v. City of Madera,* No. 1:09-cv-810 2012 WL 1067198, *2 (E.D. Cal. March 28, 2012) (internal citations omitted); *See California Union Ins. Co. v. Am.*, 914 F.2d 1271, 1278 (9th Cir. 1990) (stating that a district court may deny a Rule 56(d) request for further discovery if the movant has failed to pursue discovery in the past, or if the movant fails to show how the information sought

1   Leslie's attorney represents that she learned of the possible existence of a video recording of
2   the June 2013 incident during Leslie's March 4, 2015, deposition, when Leslie testified that she
3   recalled a video camera hanging over or near the bathroom.[59] Though Leslie's counsel has been
4   aware of the possible existence of a video since March 4, 2015 (at the latest),[60] and discovery did not
5   close until more than three months after that,[61] she never formally requested that Metro produce it.[62]
6   I therefore decline to grant her request, in part, because she has not shown that she diligently pursued
7   the video.[63]

8   I also deny Leslie's request because the information she seeks is both speculative and
9   cumulative. First, Leslie admits that she does not know if Metro is in possession of the video, has
10  lost it, is unable to locate it, or has destroyed it. Whether the footage exists—and what information it
11  might provide—is thus purely speculative.[64] Second, even assuming the video exists, the

---

would preclude summary judgment).

[59] ECF 49 at 48.

[60] Though Leslie's counsel represents that she learned of the possible existence of the video during Leslie's March 2015 deposition, it appears that she knew about the possible existence of a video as early as October 2014 because the video is referenced in Leslie's amended complaint: "[a]s a result of this incident, *which was captured on video camera, which was located in a suitable position to record the entire event* . . . ." ECF 24 ¶ 53 (emphasis added). This further supports my finding that Leslie had sufficient time to develop and discover the video evidence and is not now entitled to additional time to conduct discovery under Rule 56(d).

[61] Discovery closed on June 15, 2015. ECF 47.

[62] She did request any video recording of the incident from defendants Sarpy and Twichell in her requests for production; both responded that they were not in possession of any video. ECF 49 at 14.

[63] *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) (holding that the party making a Rule 56(d) request must be able to show that it diligently pursued its previous discovery opportunities and show "how allowing additional discovery would have precluded summary judgment."). Leslie also argues that her request should be granted because this case is in its "infancy," but her complaint was filed more than two years ago, discovery has closed, and there has been no stay in proceedings.

[64] Leslie claims that defense counsel indicated in an email "that [Metro] is aware of the video footage and acknowledges its existence." ECF 48 at 7. Leslie attaches the following March 2015 e-mail exchange between her counsel and defense counsel:

information it contains is cumulative. Leslie seeks the video to corroborate her version of events, but she has already presented her version of events through her deposition testimony and affidavit. Rule 56(d) is not a general discovery device, nor is it intended to allow a party to reopen discovery simply to corroborate information already in that party's possession.[65] At most, Leslie has shown that additional discovery might help bolster her case, not that the video will allow her to defeat summary judgment. Thus, relief under Rule 56(d) is not warranted.

### III.   Motion for Summary Judgment [ECF 47]

#### A.   Summary-judgment standards

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[66] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[67] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts

---

> Plaintiff's Counsel: Oh, that reminds me: can you tell me what this is about a video of the incident? I had not heard that there was a recording of the incident until [Leslie] mentioned it on the last day of her deposition? Do you know anything about a video? And does your client(s) plan to produce it? Please advise. ECF 49 at 8.
>
> Defense Counsel: I was also unaware that any of the incident was videotaped. I will discuss it with my clients and let you know if that is available. ECF 49 at 7.

Leslie overstates defendants' response to her inquiry.

[65] *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (9th Cir. 1994).

[66] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)). Leslie urges me to apply Nevada's summary-judgment standards to her state-law claims. ECF 48 at 7–8. Under the *Erie* doctrine, federal law governs the procedural aspects of summary judgment in a diversity case, while the law of the forum controls the substantive issues. *See Sullivan v. Massachusetts Mut. Life Ins. Co.*, 611 F.2d 261, 263–64 (9th Cir. 1979). The federal standard for review articulated in Rule 56 and *Celotex* and its progeny, as opposed to the summary-judgment standard that would ordinarily apply in a Nevada state court, is the proper standard.

[67] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

are undisputed, and the case must then proceed to the trier of fact.[68]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[69] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; she "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[70] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[71]

**B.   Sarpy is entitled to summary judgment on Leslie's assault claim; the claim survives against Twichell and Metro because whether Leslie made a harmful or offensive contact is genuinely disputed.**

To prevail on an assault claim under Nevada law, a plaintiff must show that the defendant "(1) intended to cause harmful or offensive physical contact or an imminent apprehension of such contact, and (2) put the victim in apprehension of such contact."[72] Under NRS 41.745(1), an employer is not liable for an employee's intentional tort unless the plaintiff proves: (a) the employee's conduct was not an independent venture, (b) the employee's conduct was committed in the course of his or her assigned tasks, and (c) the employee's conduct was reasonably foreseeable in light of the nature and scope of her employment.

Defendants argue that Leslie's assault claim fails because she testified that defendants never

---

[68] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[69] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[70] *Orr*, 285 F.3d at 783 (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[71] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[72] *J.D.H. v. Las Vegas Metro. Police Dep't.*, No. 2:13-cv-01300 2014 WL 3809131, *7 (D. Nev. Aug 1, 2014) (citing *Sandoval v. Las Vegas Metro. Police Dep't,* 854 F. Supp. 2d 860, 882 (D. Nev. 2012) (reversed on other grounds); RESTATEMENT (SECOND) OF TORTS § 21 (1965).

threatened her with physical force, only that she would be relieved of her duties if she left work.[73] Leslie conclusorily responds that summary judgment is inappropriate because whether she "was in a reasonable apprehension of imminent harm is a question of fact for the jury to decide."[74]

This claim survives against Twichell and Metro. Leslie testified that Twichell pushed her in the direction of the office when she attempted to leave work.[75] Given these facts, a reasonable jury could find that Twichell intended to cause the apprehension of harmful or offensive contact, and that Leslie was in apprehension of that contact. This claim also survives against Metro under a theory of respondeat superior. Leslie testified that the alleged assault occurred on the floor during working hours while Twichell was questioning her for leaving her shift. A reasonable jury could find that this was not an independent venture, that it was committed in the course of Twichell's supervisory tasks, and that it was reasonably foreseeable given the nature and the scope of her employment. This claim fails against Sarpy, however, because Leslie has offered no evidence to show that Sarpy caused or intended to cause a harmful or offensive contact, or the apprehension thereof, to Leslie. Accordingly, Leslie's assault claim may proceed only against Twichell and Metro.

**C.    Defendants are entitled to summary judgment on Leslie's IIED claim because she has not shown extreme or outrageous conduct or causation.**

To prevail on a claim for IIED under Nevada law, a plaintiff must show: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) [s]he suffered severe or extreme emotional distress and (3) actual or proximate causation."[76] Conduct is extreme and outrageous if it is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized society.[77] The plaintiff must show serious emotional distress causing

---

[73] ECF 47 at 7.

[74] ECF 48 at 8.

[75] ECF 47 at 51, 409:7–11.

[76] *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000).

[77] *See Norman v. General Motors Corp.*, 628 F. Supp. 702, 703–04 (D. Nev. 1986) (citing RESTATEMENT 2D TORTS § 46 cmt. d (1965)); *Maduike v. Agency Rent-A-Car*, 953 P.2d 24 (Nev.

physical injury or illness.[78]  Stress, sleeplessness, and loss of appetite are insufficient to establish severe emotional distress.[79]

Defendants argue that Leslie fails to make a prima facie showing of IIED because "the complained-of conduct is not extreme and outrageous, nor done with the intent to, or reckless disregard for, causing emotional distress."[80]  Leslie responds that extreme or outrageous conduct can be inferred from the existence of an unequal power structure, like the one between a supervisor and subordinate.

Leslie cannot prove extreme or outrageous conduct by pointing to a hierarchy that places some employees in supervisory positions over others.  "[P]ersonnel management activity is insufficient to support a claim of [IIED], even if improper motivation is alleged."[81]  Pushing back one employee's break 15 minutes to accommodate another employee is not extreme or outrageous, nor is stopping an employee and questioning her decision to abruptly leave work following a quarrel with management, or threatening to terminate her employment if she leaves.

Leslie's IIED claim also fails because she has not shown causation.  Though the record reveals that Leslie soiled herself, an ambulance was called, and that she went to Urgent Care, Leslie has offered no medical records or other evidence to show that any of her physical symptoms were caused by defendants' actions rather than by her underlying conditions.  I therefore grant summary judgment against Leslie on her IIED claim because she has not demonstrated that defendants' conduct was extreme or outrageous or that it caused her to suffer any physical symptoms.

**D.    Defendants are entitled to summary judgment on Leslie's false-imprisonment claim because she has not shown that she was confined to boundaries fixed by defendants.**

Under Nevada law, an individual is liable for false imprisonment "if (a) he acts intending to

---

1998).

[78] *See Olivero v. Lowe*, 995 P.2d 1023, 1026 (Nev. 2000).

[79] *Id.*

[80] ECF 47 at 8.

[81] *Welder v. Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011).

confine [plaintiff] within boundaries fixed by [defendant], and (b) his act directly or indirectly results in [plaintiff's] confinement . . . , and (c) [plaintiff] is conscious of the confinement or is harmed by it."[82]  Neither verbal directions unaccompanied by force or threats of any character,[83] nor threatened job loss, constitutes force or threat of force for purposes of false imprisonment.[84]

Leslie alleges that defendants falsely imprisoned her by "restraining [her] from leaving the workplace when she asked to, and blocking her path to [the] restroom."[85]  Defendants argue that Leslie was never totally confined, and even if the alleged imprisonment did occur, it was not by force or threat of force.[86]  Leslie testified that Twichell "kind of pushed [her] to go into the direction of the office";[87] but that she refused, turned around, and pulled away.[88]  Leslie also testified that Twichell blocked the entrance to one of three restrooms,[89] and that Sarpy threatened to fire her if she left.[90]

These allegations do not establish a prima facie case of false imprisonment.  It does not appear that Twichell's alleged act of pushing Leslie toward the office resulted in Leslie's confinement in any fixed area.  Twichell's alleged act of blocking the entrance to the restroom is also not false imprisonment because Leslie was not confined to any fixed area; she was simply momentarily prevented from entering the restroom.  Leslie's allegations against Sarpy also do not rise to the level of false imprisonment.  Even if Sarpy told Leslie not to leave the premises and threatened to fire her if she left and Leslie was indirectly confined to the building as a result, the

---

[82] *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (quoting Restatement 2d of Torts § 35 (1965)).

[83] *Lerner v. Shops v. Marin*, 423 P.2d 398 (Nev. 1967).

[84] *Moen v. Las Vegas Intern. Hotel, Inc.*, 521 P.2d 370, 371 (Nev. 1974).

[85] ECF 24 ¶ 114.

[86] ECF 47 at 15.

[87] *Id.* at 54, 426:4–6.

[88] *Id.* at 54, 426:6–7.

[89] *Id.* at 51, 412:13–14.

[90] *Id.* at 41, 410:7–9.

force or threat of force element is lacking. Because Leslie has not established a prima facie case of false imprisonment against Twichell or Sarpy, her vicarious liability claim against Metro also fails. Accordingly, I grant summary judgment in favor of defendants on Leslie's false-imprisonment claim.

**E.  Metro is entitled to Summary Judgment on Leslie's disability-discrimination claim under 42 USC § 12112.**

The ADA "prohibits an employer from discriminating against a qualified individual with a disability by failing to make 'reasonable accommodations to the known physical or mental limitations' of that individual."[91] Employers are required to engage in an interactive process with employees to identify and implement appropriate reasonable accommodations; this interactive process is triggered by a request for accommodation or an employer's recognition of the need for accommodation.[92] Liability for failure to provide reasonable accommodation arises if the employer is responsible for the breakdown in the interactive process.[93]

Defendants argue that Leslie's disability-discrimination claim fails because she is not disabled within the meaning of the Act as she has not shown that any of her disabilities affect her daily activities.[94] Defendants further argue that even if Leslie can demonstrate that she is disabled, she lacks evidence to show that defendants took any adverse employment action against her because of her disabilities. Leslie responds that summary judgment is inappropriate because she has testified that she was discriminated against by being denied reasonable accommodations to use the restroom and with respect to her schedule in general.[95] I construe Leslie's allegations as a claim for failure to

---

[91] *Willis v. Pacific Maritime Ass'n*, 244 F.3d 675, 680 (9th Cir. 2001) (quoting 42 USC 12112(b)(5)(A)).

[92] *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc) (vacated on other grounds by 525 U.S. 391 (2002).

[93] *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

[94] ECF 47.

[95] ECF 48 at 9.

accommodate.

But the record belies Leslie's claim. She testified that the only accommodation request she made was for an early break time to take her diabetes medication.[96] She further testified that she "had a conversation" with an employee in the Health & Safety department, but never followed through with the formal accommodations process.[97] Instead, she frequently swapped breaks with coworkers. Leslie argues that she was treated disparately because Metro required a doctor's note or physical examination to provide accommodations.[98] But Leslie also testified that she is unaware of any employee who was accommodated without meeting these requirements.[99] Thus, she has not shown that she was treated disparately from any other employee seeking an accommodation.

Leslie's accommodation claim also fails because she was responsible for the breakdown in the interactive process. Leslie testified that she was repeatedly told to go through Health & Safety and provide a doctor's note, but she declined to do so. An employer is not required to accept an employee's unsubstantiated statements regarding her medical condition.[100] Leslie "is not entitled to refuse to provide information that is critical to initiating a meaningful interactive process directed at determining reasonable accommodations for h[er], and then later protest that [s]he was unfairly deprived of those accommodations."[101] Because Leslie—not Metro—was responsible for the breakdown in the interactive process, Metro is entitled to summary judgment on Leslie's

---

[96] ECF 47 at 36, 224:3–7.

[97] *Id.* at 36, 224:12–17.

[98] ECF 48 at 9; ECF 47 at 39, 302:1–8.

[99] ECF 47 at 39, 302:9–12.

[100] *See Allen v. Pacific Bell*, 348 F.3d 1113, 1114–15 (9th Cir. 2003).

[101] *Hayes v. Wal-Mart Stores, Inc.*, 781 F. Supp. 2d 1080, 1093 (D. Oregon) (granting summary judgment in favor of defendants because they were denied an opportunity to provide an appropriate accommodation due to plaintiff's refusal to provide critical information or otherwise cooperate with defendants regarding his alleged need for accommodations).

1  accommodation claim for failure to give her earlier breaks to take her diabetes medication.[102]

2  As for her purported request to use the restroom on demand, there is no evidence in the
3  record that Leslie ever requested an accommodation for her IBS, or that her request was
4  unreasonably denied. She testified that she was, in fact, allowed to use the restroom on demand: "if
5  we have to go to the bathroom, we don't need to ask, we can just go. So even if its four times in a
6  row, you can just go, you don't need to ask."[103] Though the standard for determining whether an
7  employer has been put on notice that an employee is seeking a reasonable accommodation for the
8  employee's limitations is low, an employee must inform "the employer of a need for an adjustment
9  due to a medical condition . . . ."[104] "In general . . . it is the responsibility of the individual to inform
10 the employer that an accommodation is needed."[105] Because there is no evidence that Leslie
11 requested an accommodation for her IBS, Leslie's accommodation claim fails under this theory as a
12 matter of law. And even if Metro recognized that Leslie needed an accommodation for her IBS,
13 there is no evidence that Metro failed to provide reasonable accommodation based on Leslie's own
14 testimony that she could use the bathroom whenever she needed—and as frequently as she
15 needed—without permission. Accordingly, Metro is entitled to summary judgment on Leslie's
16 disability-discrimination claim.

**F.  Leslie's retaliation claim under 42 USC § 12203 fails because she lacks evidence to show that she engaged in protected activity.**

19 To make a prima facie case for retaliation, a plaintiff must show: "(1) she engaged in a
20 protected activity; (2) she suffered a materially adverse employment action; and (3) there exists a
21 causal connection between the protected activity and the adverse employment action."[106] Protected

---

[102] *See Zivkovic*, 302 F.3d at 1089.

[103] ECF 47 at 33, 121:18–21.

[104] *Barnett,* 228 F.3d at 1112.

[105] 29 CFR 1630.9.

[106] *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 849 (9th Cir. 2004).

activity includes opposing any act or practice by the employer made unlawful by the ADA[107] and pursuing rights guaranteed under the act, like requesting reasonable accommodations.[108] Adverse employment action is "any action reasonably likely to deter employees from engaging in protected activity."[109]

Defendants argue that Leslie's retaliation claim fails as a matter of law because she did not engage in protected activity and she was not subjected to an adverse employment action.[110] Even if she was subjected to an adverse employment action, she has not shown that it was because she engaged in protected activity. Leslie offers no response, but her complaint provides some insight into her theory. She alleges that Metro retaliated against her "by unfairly writing her up for disciplinary offenses and denying her the shift change she requested, for challenging and/or complaining about the unjust discrimination and harassment she suffered."[111]

Leslie testified at her deposition that she believes that defendants retaliated against her for the June 18, 2013, incident,[112] but she identifies no protected activity that she engaged in on that day. In fact, she testified that she did not request any accommodations on that day.[113] She offers no evidence that she complained about being discriminated against, harassed, or denied a requested accommodation on that day, either. Calling Twichell to complain about another employee's performance was not protected activity. Nor was attempting to go home sick—without offering any further explanation—following her dispute with Twichell on the phone. Because Leslie has not shown that she engaged in protected activity, she cannot make a prima facie case for retaliation, and

---

[107] *See* 42 USC § 12203(a).

[108] *Pardi*, 389 F.3d at 849 (stating, "[p]ursuing one's rights under the ADA constitutes a protected activity.").

[109] *Id.* at 850.

[110] ECF 47 at 13.

[111] ECF 24 at 16.

[112] ECF 47 at 40, 319:18–21; 41:18–25.

[113] *Id.* at 49, 404:5–12.

defendants are entitled to summary judgment.

**G.     Defendants are entitled to summary judgment on Leslie's § 1983 claim.**

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[114] To state a claim under § 1983, a plaintiff must allege that (1) a person acting under color of state law (2) violated a right secured to plaintiff by the Constitution or the laws of the United States.[115] "[A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[116] There is no respondeat superior liability for § 1983 claims.[117] To plead a § 1983 claim against a local governmental entity, a plaintiff must show that the violation was a direct result of that entity's policy or custom.[118]

Defendants argue that Leslie's § 1983 claim fails because Twichell and Sarpy are not state actors for § 1983 purposes and Leslie cannot establish a constitutional violation because she was not restrained by force or threat of force, so she was not seized within the meaning of the Fourth Amendment.[119] Defendants also argue that Leslie's § 1983 claim fails against Metro for the additional reason that she has not alleged or shown that any violation was a result of a Metro policy or custom.[120]

Leslie again offers no response. In her complaint, she alleges that Sarpy and Twichell were "acting under the color of state law in their capacity as [Metro] police officers and/or police

---

[114] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal citations and quotations omitted).

[115] *West v. Atkins*, 487 U.S. 42, 48–49 (1988).

[116] *Polk Cnty v. Dodson*, 454 U.S. 312, 317–18 (1981).

[117] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 692 (1978).

[118] *Id.* at 690–92.

[119] ECF 47 at 19

[120] *Id.*

department supervisors "[121] when they violated her Fourth Amendment rights to be free from unlawful arrest and excessive force.[122]  She makes no custom or policy allegations against Metro, and nothing in her deposition testimony indicates a custom or policy of making unlawful arrests or using excessive force.  Accordingly, Leslie's false-arrest and excessive-force claim fails against Metro as a matter of law.

Leslie's § 1983 claim against Twichell and Sarpy fails because she has not shown that they were acting under color of state law or that she suffered a constitutional violation.  There is no evidence in the record to show that Twichell and Sarpy were acting as law enforcement—rather than in their capacities as supervisors—when they allegedly unlawfully arrested Leslie.  There is also no evidence that Leslie was "seized" within the meaning of the Fourth Amendment.  An arrest occurs when the encounter between the individual and the police "may be sufficiently constrictive to cause the average person, innocent of crime, to reasonably think that he was being arrested."[123]  The record is devoid of any facts that would support a reasonable belief on Leslie's part that she was being arrested when Twichell and Sarpy questioned her.  The questioning was brief and, upon Leslie's insistence, both women moved aside and allowed her to proceed into the restroom.  Once she left the restroom, Leslie was instructed to go to the conference room where the ambulance she had asked Twichell and Sarpy to call was waiting.[124]  She left on her own free will after her medical examination.[125]  Simply put, these facts do not implicate the Fourth Amendment.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that defendants' Motion to Strike **[ECF 54]** is **GRANTED.**

IT IS FURTHER ORDERED that plaintiff's Rule 56(d) Request to Conduct Additional

---

[121] ECF 24 at ¶122.

[122] *Id.* at ¶¶ 123–124.

[123] *United States v. Beck*, 598 F.2d 497, 500 (9th Cir. 1979) (footnote omitted).

[124] ECF 47 at 53, 418:5–9.

[125] *Id.* at 54, 428:2–5.

Discovery is **DENIED.**

IT IS FURTHER ORDERED that defendants' Motion for Summary Judgment **[ECF 47]** is **GRANTED in part and DENIED in part**: Summary Judgment is granted in favor of defendants and against plaintiff on claims four, five, six, seven, and eight. Judgment is granted in favor of defendant Marla Sarpy on claim three. The motion is denied as to claim three against defendants Jonnie Twichell and Las Vegas Metropolitan Police Department. **Plaintiff's only remaining claim is claim three (assault) against Twichell and Metro.**[126]

This case is referred to the magistrate judge for a settlement conference. The parties' obligation to file their joint pretrial order is stayed until 15 days following the settlement conference.

Dated December 18, 2015

_____
Jennifer A. Dorsey
United States District Judge

---

[126] The parties stipulated to the dismissal of Claims One and Two. ECF 42.